UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 26-1596

EQUAL MEANS EQUAL; HEROICA FOUNDATION; JACQUELINE FENORE, individually and on behalf of others similarly situated,

*Plaintiffs - Appellants,*

v.

DONALD JOHN TRUMP, in the official capacity as President of the United States; CRAIG BROWN, in the official capacity as Acting Director of the Selective Service System; SELECTIVE SERVICE SYSTEM, an Independent Agency within the Executive Branch of the Federal Government,

*Defendants - Appellees*.

ON APPEAL FROM A FINAL JUDGMENT OF
THE US DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

MOTION FOR LEAVE TO FILE BRIEF
OF AMICI CURIAE
NATIONAL WOMEN'S POLITICAL CAUCUS, NATIONAL WOMEN VETERANS UNITED, INTERNATIONAL ASSOCIATION OF MILITARY WOMEN OF COLOR, SERVICE WOMEN'S ACTION NETWORK, et al.,

Andrea C. Kramer, No. 119009
Kramer Law LLC
53 State Street, Suite 500
Boston, MA 02109
(617) 780-1685
andrea@kramerlawllc.com

With Leah Gould on the Brief
Assistant Dean of Public Interest
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
312-503-8373
leah.gould@law.northwestern.edu

Lead amici National Women's Political Caucus, National Women Veterans United, International Association of Military Women of Color, and Service Women's Action Network are organizations whose members have devoted their lives to military service and to advancing the constitutional equality of women. The remaining amici (listed in Appendix A) include organizations dedicated to advancing the constitutional, legal, civic, and political equality of women.

The women veterans represented among amici include individuals who have deployed to combat zones, commanded units, flown military aircraft, served aboard naval vessels, operated intelligence and cyber systems, provided medical support in hostile environments, and performed countless other duties essential to the Nation's defense. Their members have accepted the burdens of military service, including prolonged deployments, separation from family, physical danger, injury, disability, and, for some, the loss of fellow servicemembers.

Collectively, amici represent thousands of women whose interests are directly affected by the constitutional questions presented in this appeal. Although their missions differ, they share a common interest in ensuring that government may not impose the highest obligations of citizenship upon women while denying them the equal constitutional protection those obligations require.

Women veterans possess a unique perspective on the issues before this Court. Their service demonstrates that women have long accepted the responsibilities of defending the Nation under the same demanding standards of duty, sacrifice, and commitment expected of their male counterparts. Their experience also demonstrates that the factual assumptions underlying *Rostker v. Goldberg*, 453 U.S. 57 (1981), no longer reflect modern realities.

For that reason, amici have a direct interest in ensuring that laws governing military service accurately reflect both the realities of today's military and the Constitution's guarantee of equal protection. If women may be called upon to fight, sacrifice, and, if necessary, die in defense of the Nation, they are entitled to the equal constitutional protections that accompany those obligations. This appeal presents not merely a question concerning Selective Service registration, but a broader question of constitutional equality.

Respectfully submitted,
Counsel for Amici Curiae

Andrea C. Kramer, No. 119009
Kramer Law LLC
53 State Street, Suite 500
Boston, MA 02109
(617) 780-1685
andrea@kramerlawllc.com

**APPENDIX A**

A Luminous Mind Productions, Inc., New York City, NY

AAUW, Brainerd, MN

AAUW of Michigan, Wyandotte, MI

American Medical Women's Association, Albany, NY

Bienstar Human Services, Los Angeles, CA

California Commission on the Status of Women & Girls, Sacramento, CA

CalPride, Modesto, CA

Center for Policing Equity, West Hollywood, CA

City of West Hollywood, West Hollywood, CA

South Carolina Branch of National Organization of Women, Columbia, SC

Combat Sexual Assault, Sanford, NC

Desiree Alliance, Branch, Arkansas

Feminists in Struggle, San Diego, CA

Georgia Green Party, Decatur, Georgia

Georgia National Organization of Women, Marietta, GA

Global Faith and Justice Project, Santa Fe, New Mexico

Happy Chic's, Lakeville, IN

Her Service Matters, Chicago, IL

Indivisible Lincoln Square, Chicago, IL

In Progress Productions, West Hollywood, CA

Institute on Violence, Abuse and Trauma, San Diego, CA

Jewish Women International, Washington, DC

Justice and Joy Collaborative, Portland, OR

Lunch Therapy, Los Angeles, CA

Moral Injury Support Networks for Servicewomen, Inc., Robbins, NC

Muslims for Progressive Values, Los Angeles, CA

National Black Justice Collective, Washington, DC

National Council of Jewish Women – Chicago North Shore, Chicago, Illinois

National Organization of Women – Albuquerque, Albuquerque, NM

National Women Veterans United-Rockford Chapter, Loves Park, IL

Ni-ta-nee National Organization of Women, Centre County, PA

Akron National Organization of Women, Akron, OH

Raleigh National Organization of Women, Raleigh, NC

Ohio Equal Rights, Columbus, OH

Ohio Federation of Business and Professional Women, Vermilion, OH

Ohio National Organization of Women, Columbus, OH

Pennsylvania Religious Coalition for Reproductive Justice, Harrisburg, PA

Rethinking Eve, LLC, Darien, CT

Santa Barbara Women's Political Committee, Santa Barbara, CA

Santa Fe National Organization of Women, Santa Fe, NM

Sisters of Perpetual Indulgence, Tampa Bay, FL

The Susan Jolley Foundation, Marietta, GA

Title Nine, Emeryville, CA

Will County National Organization of Women, Plainfield, IL

Women's eNews, Brooklyn, NY

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

---

No. 26-1596

---

EQUAL MEANS EQUAL; HEROICA FOUNDATION; JACQUELINE FENORE, individually and on behalf of others similarly situated,

*Plaintiffs - Appellants,*

v.

DONALD JOHN TRUMP, in the official capacity as President of the United States; CRAIG BROWN, in the official capacity as Acting Director of the Selective Service System; SELECTIVE SERVICE SYSTEM, an Independent Agency within the Executive Branch of the Federal Government,

*Defendants - Appellees*.

---

ON APPEAL FROM A FINAL JUDGMENT OF
THE US DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

---

# MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE NATIONAL WOMEN'S POLITICAL CAUCUS, NATIONAL WOMEN VETERANS UNITED, INTERNATIONAL ASSOCIATION OF MILITARY WOMEN OF COLOR, SERVICE WOMEN'S ACTION NETWORK, et al.,

---

Andrea C. Kramer, No. 119009
Kramer Law LLC
53 State Street, Suite 500
Boston, MA 02109
(617) 780-1685
andrea@kramerlawllc.com

With Leah Gould on the Brief
Assistant Dean of Public Interest
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
312-503-8373
leah.gould@law.northwestern.edu

## DISCLOSURE STATEMENT

In compliance with Local Rule 26.1 of the First Circuit Local Rules, amici, all nongovernmental corporation parent corporation, state that none of them has any parent company and that no publicly held corporation owns 10% or more of any of them.

## RULE 29(a)(4)(E) STATEMENT

Amici state that Leah Gould authored the brief in whole or in part, no party or a party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person other than the amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief.

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ..... ii

INTEREST OF AMICI ..... 1

SUMMARY OF ARGUMENT ..... 2

ARGUMENT ..... 5

I. Women Veterans Demonstrate that Military Service is Defined by Ability, Commitment, and Performance Rather than Sex ..... 5

II. Women Have Accepted the Burdens of Military Service Yet Continue to be Excluded from an Equal Civic Obligation. ..... 6

III. Excluding Women from Selective Service Undermines Military Readiness ..... 8

IV. Continued Exclusion Reinforces an Outdated View of Military Service ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

Page

CASES

*Rostker v. Goldberg*,
453 U.S. 57 (1981)........................................................................*passim*

STATUTES

United States Constitution,
Twenty-Eighth Amendment (proposed 1972) ................................................7

## INTEREST OF AMICI

Lead amici National Women's Political Caucus, National Women Veterans United, International Association of Military Women of Color, and Service Women's Action Network (described in Appendix A) are organizations whose members have devoted their lives to military service and to advancing the constitutional equality of women. The remaining amici (listed in Appendix A) include organizations dedicated to advancing the constitutional, legal, civic, and political equality of women.

The women veterans represented among amici include individuals who have deployed to combat zones, commanded units, flown military aircraft, served aboard naval vessels, operated intelligence and cyber systems, provided medical support in hostile environments, and performed countless other duties essential to the Nation's defense. Their members have accepted the burdens of military service, including prolonged deployments, separation from family, physical danger, injury, disability, and, for some, the loss of fellow servicemembers.

Collectively, amici represent thousands of women whose interests are directly affected by the constitutional questions presented in this appeal. Although their missions differ, they share a common interest in ensuring that government may not impose the highest obligations of citizenship upon women while denying them the equal constitutional protection those obligations require.

Women veterans possess a unique perspective on the issues before this Court. Their service demonstrates that women have long accepted the responsibilities of defending the Nation under the same demanding standards of duty, sacrifice, and commitment expected of their male counterparts. Their experience also demonstrates that the factual assumptions underlying *Rostker v. Goldberg*, 453 U.S. 57 (1981), no longer reflect the realities of the modern Armed Forces.

For that reason, amici have a direct interest in ensuring that laws governing military service accurately reflect both the realities of today's military and the Constitution's guarantee of equal protection. If women may be called upon to fight, sacrifice, and, if necessary, die in defense of the Nation, they are entitled to the equal constitutional protections that accompany those obligations. This appeal presents not merely a question concerning Selective Service registration, but a broader question of constitutional equality.

## SUMMARY OF ARGUMENT

Amici fully support and incorporate by reference the arguments set forth in Appellants' Brief and, in particular, Appellants' arguments demonstrating that the Equal Rights Amendment is valid and enforceable, that continued application of intermediate scrutiny to sex-based classifications is inconsistent with the

Constitution's guarantee of equal protection, and that women are entitled to full constitutional equality under the same standard of judicial protection afforded to other protected classes. Amici submit this brief separately to emphasize the unique perspective of women veterans and military organizations, whose extraordinary service to the Nation demonstrates the profound constitutional and moral imperative of recognizing women's full legal equality.

This appeal concerns far more than eligibility for Selective Service registration. It concerns whether the Constitution permits the Government to continue imposing the highest obligations of citizenship on women while denying them the equal constitutional status those obligations require.

For decades, women have volunteered to defend the Nation. They have deployed into combat theaters, faced enemy fire, commanded troops, flown combat missions, served aboard naval vessels, gathered intelligence, and accepted the same risks and sacrifices that military service imposes on men. Women veterans have demonstrated through their service that they are fully capable of bearing the responsibilities of national defense.

The continued exclusion of women from Selective Service therefore rests on factual assumptions that no longer reflect the realities of the modern Armed Forces. Women now serve in every military occupational specialty, including positions that were once categorically closed to them. The rationale upon which *Rostker v.*

*Goldberg* relied has been fundamentally undermined by decades of military experience and the U.S. Department of Defense's own recognition that qualified women are capable of serving throughout the force. 453 U.S. at 76-79.

But this case presents an equally important constitutional principle. Military service represents one of the most serious obligations that citizenship can require. Women have already demonstrated their willingness to accept that obligation. Yet federal law continues to classify military responsibility as principally male while the broader constitutional framework continues to deny women the equal constitutional protection afforded to classifications such as race.

Amici do not advocate military conscription as a matter of policy. Rather, they submit that if the Government may require women to assume the same fundamental obligations of citizenship as men, it must also recognize their equal constitutional status. Equal citizenship cannot be divided into separate categories of responsibility and protection.

The Equal Rights Amendment further underscores this constitutional principle. Equality of rights under the law cannot coexist with legal doctrines that continue to permit government to classify citizens differently on the basis of sex absent the most compelling constitutional justification. Whether analyzed under the Equal Protection guarantee or the Equal Rights Amendment, the continued exclusion of women from Selective Service reflects an outdated conception of

women's constitutional status that no longer corresponds to either military reality or constitutional equality.

Women veterans understand this inconsistency better than anyone. They have fulfilled the obligations of citizenship through honorable military service. Their experience demonstrates both that the factual premises underlying *Rostker* have collapsed and that equal obligation and equal constitutional protection are inseparable. For those reasons, the judgment below should be reversed.

## ARGUMENT

### I. Women Veterans Demonstrate that Military Service is Defined by Ability, Commitment, and Performance Rather than Sex.

The members of amici organizations know from firsthand experience what military service requires. Modern military operations demand technical competence, physical capability, leadership, judgment, discipline, adaptability, and unwavering commitment to mission. Success depends upon individual ability and performance—not generalized assumptions about sex.

For decades, women have served in operational environments throughout the world. They have deployed into combat theaters, commanded personnel, flown military aircraft, served aboard naval vessels, gathered intelligence, maintained advanced weapons systems, treated casualties under hostile conditions, and carried out military missions at every level. Their service has been measured according to

the same standards of readiness, discipline, and mission accomplishment expected of every member of the Armed Forces.

Women veterans have not merely participated in modern military operations—they have helped shape them. Their experience demonstrates that military readiness depends upon qualified individuals, not outdated assumptions concerning the capabilities of men and women as groups.

Their service also demonstrates something more fundamental. By voluntarily assuming the risks and responsibilities of military service, women have accepted one of the highest obligations that citizenship can require. They have answered the Nation's call without regard to sex, proving through decades of distinguished service that civic obligation is shared equally by women and men.

Accordingly, the Court should evaluate the current Selective Service framework in light of present military realities rather than assumptions that no longer describe either today's Armed Forces or the constitutional relationship between citizenship and equal protection.

## II. Women Have Accepted the Burdens of Military Service Yet Continue to be Excluded from an Equal Civic Obligation.

Military service occupies a unique place in American civic life. The obligation to defend the Nation is among the most serious responsibilities that citizenship can entail. Registration for Selective Service reflects that responsibility.

It represents the possibility that a citizen may one day be called upon to serve the Nation in a time of extraordinary need.

Women veterans have already demonstrated their willingness to shoulder that responsibility. They have volunteered to serve, accepted deployment orders, faced danger, and endured the hardships associated with military service. Yet federal law continues to classify potential military obligation as principally a male responsibility.

This inconsistency carries practical and symbolic consequences. Practically, it creates a system in which women may bear the burdens of military service but remain excluded from equal participation in the legal framework governing national mobilization. Symbolically, it communicates that women's service is somehow different from, or less central to, the Nation's defense obligations than men's service. Women veterans know from experience that this message is inconsistent with military reality.

The question before the Court is not whether women are willing to serve. They already do. The question is whether federal law may continue to treat military obligation as uniquely male when women have demonstrated through decades of service that national defense is a shared responsibility.

## III. Excluding Women from Selective Service Undermines Military Readiness.

The purpose of Selective Service is preparedness. Congress established a registration system to ensure that, should national necessity require conscription, the Nation could identify and mobilize qualified personnel efficiently and effectively.

Today's military bears little resemblance to the military that existed when *Rostker* was decided. Women now serve in every military occupational specialty, including combat specialties once closed to them. The U.S. Department of Defense has concluded that qualified women are capable of performing throughout the full spectrum of military operations.

Against that backdrop, excluding women from registration cannot be reconciled with the Government's own understanding of military readiness. A system intended to identify those capable of serving is necessarily incomplete when it excludes an entire class of citizens whom the military itself recognizes as fully qualified to serve.

Nor can such exclusion be reconciled with the broader constitutional commitment to equality. The continued maintenance of a male-only registration system reinforces stereotypes concerning the respective civic roles of men and women that modern military experience has thoroughly disproven. Constitutional

analysis cannot remain anchored to factual assumptions that no longer reflect military reality.

Women veterans do not suggest that questions of military readiness alone resolve the constitutional issues before this Court. Rather, their experience demonstrates both that the factual premises underlying *Rostker* have collapsed and that continued reliance upon those premises perpetuates unequal treatment that no longer serves either military necessity or constitutional equality.

## IV. Continued Exclusion Reinforces an Outdated View of Military Service.

The modern military has evolved. Constitutional analysis must account for those changed realities. A statute requiring only men to register for possible military conscription inevitably communicates that civic obligation is fundamentally different for men and women. At the same time, it reinforces the broader notion that women continue to occupy a distinct constitutional status whenever government classifies citizens on the basis of sex.

Women veterans know from experience that these assumptions no longer reflect reality. They have fought, led, commanded, sacrificed, and served with distinction under the same standards expected of every servicemember. Their service refutes any suggestion that military responsibility is inherently male.

The Constitution likewise rejects governmental classifications that rest upon obsolete assumptions rather than present realities. Women who have demonstrated

their willingness to accept the highest obligations of citizenship are entitled to equal protection under the law.

This Court need not resolve every question concerning the Equal Rights Amendment or the future of sex-equality jurisprudence to decide this appeal. It need only recognize that the factual assumptions underlying the existing registration system no longer correspond to either the structure of today's military or the constitutional principle that equal obligations of citizenship must be accompanied by equal protection of the laws.

## CONCLUSION

Women veterans have served this Nation with honor and distinction. They have accepted the burdens of military service, deployed throughout the world, led troops, flown combat missions, provided lifesaving care, gathered intelligence, and demonstrated through decades of service that national defense is a shared civic responsibility.

Their experience demonstrates more than women's ability to serve. It demonstrates that the Constitution cannot continue to separate equal obligation from equal constitutional protection. Women who stand ready to defend the Constitution are entitled to its full protection.

Because the factual premises underlying *Rostker v. Goldberg* have fundamentally changed, and because the continued exclusion of women from

Selective Service perpetuates a constitutional distinction that no longer reflects either military reality or the principles of equal protection, the judgment below should be reversed.

Respectfully submitted,
Counsel for Amici Curiae

Andrea C. Kramer No., 119009
Kramer Law LLC
53 State Street, Suite 500
Boston, MA 02109
(617) 780-1685
andrea@kramerlawllc.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that this Brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) in that (1) there are fewer than 6,500 words in the Brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and (2) this document has been prepared in a proportionally spaced typeface in Microsoft Word using Times New Roman in 14-point font.

Andrea C. Kramer

**APPENDIX A**

The National Women's Political Caucus (NWPC) was founded in 1971 after Congress' failed to pass the Equal Rights Amendment in 1970. It has been fighting for equal rights for women ever since. NWPC's mission is dedicated to advancing the legal, economic, and social equality of women. NWPC is a multi-partisan grassroots organization that helps to elect women to political office to support the still unfinished fight for women's full legal equality.

National Women Veterans United (NWVU) consists of a network of women veterans across the nation with a history of past and/or present service in the United States Armed Forces, during War and peacetime. NWVU'S mission is to advocate for female military veterans and ensure that they are treated equally. NWVU advocates for military women veterans by hosting community panel discussions and forums to educate the public on issues that affect women veterans. NWVU promotes and hosts programs during National Women's History Month, Women Veterans Day, and Memorial Day to honor the contributions of women veterans, advocate for their rights, and recognize their profound sacrifices.

The International Association of Military Women Of Color (IAMWOC) is an international organization that advocates for the rights and well-being of military women of color, veterans, and family members. IAMWOC advocates for military women of color regarding military laws and policies. IAMWOC works to

ensure that Women of Color receive fair and equal treatment in and out of the military.

The Service Women's Action Network (SWAN) was founded in 2007 in the United States as a national, member-driven advocacy organization supporting servicewomen and women veterans. The Service Women's Action Network (SWAN) advocates for over 350,000 active-duty servicewomen and 2 million women veterans in the US. SWAN's research has directly contributed to major legislative shifts, including 1) Successfully overturning the ban on women serving in direct combat role, 2) Pushing for military justice reform to prosecute sexual assault cases outside of the military chain of command.3) Securing the recognition of Medical Sexual Trauma as a valid source of post-traumatic stress by the VA.

American Medical Women's Association (AMWA) was founded in 1915 when women faced severe discrimination and were barred from the American Medical Association. It is the oldest multi-specialty organization dedicated to advancing women in medicine and improving women's health. Its membership is comprised of physicians, residents, medical students, pre-medical students, health care professionals, and supporters.

A Luminous Mind Productions, Inc., New York City, NY

AAUW, Brainerd, MN

AAUW of Michigan, Wyandotte, MI

American Medical Women's Association, Albany, NY

Bienstar Human Services, Los Angeles, CA

California Commission on the Status of Women & Girls, Sacramento, CA

CalPride, Modesto, CA

Center for Policing Equity, West Hollywood, CA

City of West Hollywood, West Hollywood, CA

South Carolina Branch of National Organization of Women, Columbia, SC

Combat Sexual Assault, Sanford, NC

Desiree Alliance, Branch, Arkansas

Feminists in Struggle, San Diego, CA

Georgia Green Party, Decatur, Georgia

Georgia National Organization of Women, Marietta, GA

Global Faith and Justice Project, Santa Fe, New Mexico

Happy Chic's, Lakeville, IN

Her Service Matters, Chicago, IL

Indivisible Lincoln Square, Chicago, IL

In Progress Productions, West Hollywood, CA

Institute on Violence, Abuse and Trauma, San Diego, CA

Jewish Women International, Washington, DC

Justice and Joy Collaborative, Portland, OR

Lunch Therapy, Los Angeles, CA

Moral Injury Support Networks for Servicewomen, Inc., Robbins, NC

Muslims for Progressive Values, Los Angeles, CA

National Black Justice Collective, Washington, DC

National Council of Jewish Women – Chicago North Shore, Chicago, Illinois

National Organization of Women – Albuquerque, Albuquerque, NM

National Women Veterans United-Rockford Chapter, Loves Park, IL

Ni-ta-nee National Organization of Women, Centre County, PA

Akron National Organization of Women, Akron, OH

Raleigh National Organization of Women, Raleigh, NC

Ohio Equal Rights, Columbus, OH

Ohio Federation of Business and Professional Women, Vermilion, OH

Ohio National Organization of Women, Columbus, OH

Pennsylvania Religious Coalition for Reproductive Justice, Harrisburg, PA

Rethinking Eve, LLC, Darien, CT

Santa Barbara Women's Political Committee, Santa Barbara, CA

Santa Fe National Organization of Women, Santa Fe, NM

Sisters of Perpetual Indulgence, Tampa Bay, FL

The Susan Jolley Foundation, Marietta, GA

Title Nine, Emeryville, CA

Will County National Organization of Women, Plainfield, IL

Women's eNews, Brooklyn, NY